UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM MILLER,                     )
                                    )
            Plaintiff,              )     Case No. 1:13-cv-566
                                    )
v.                                  )     Honorable Robert Holmes Bell
                                    )
WOLF FIEDLER,                       )
                                    )     **REPORT AND RECOMMENDATION**
            Defendant.              )
_____)

This is a civil action brought by a Michigan citizen against a citizen of Canada under the court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Plaintiff seeks to recover $133,837.00 from defendant, to compensate plaintiff for a loss in that amount suffered as a result of his purchase of stock in Montana Mining Corp. in the year 2007. Plaintiff alleges that he was induced to purchase the stock by fraudulent representations made by James Betnar, a Canadian citizen who allegedly was acting under the direction of defendant. Plaintiff alleges that the misrepresentations violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, as well as the Michigan Uniform Securities Act, MICH. COMP. LAWS § 451.2501 and state common law.

Presently pending before the court is defendant's motion to dismiss the action. (docket # 4). The motion is made on three distinct grounds. First, defendant moves pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the case for lack of *in personam* jurisdiction. Second, defendant seeks dismissal under Fed. R. Civ. P. 12(b)(6), arguing that plaintiff's federal statutory claim under section

10(b) of the 1934 Securities Exchange Act and his state statutory claim under the Michigan Uniform Securities Act are barred by the statute of limitations. Third, defendant seeks dismissal on the ground that plaintiff has not alleged an actionable case of fraud under either federal or Michigan law.

District Judge Robert Holmes Bell has referred this case to me for all pretrial purposes, including the issuance of a report and recommendation on dispositive motions. 28 U.S.C. § 636(b)(1)(B). Each party has filed two briefs, along with affidavits and supporting documentary material. As only issues of law are involved, oral argument would not be helpful. Having reviewed the submissions of the parties, I conclude that plaintiff has established a *prima facie* case of personal jurisdiction over defendant under Sixth Circuit authority. I further conclude, however, that plaintiff's claims are barred by the statute of limitations or do not state a cause of action for fraud.

### **Allegations in Complaint**

Plaintiff alleges that James Betnar, a resident of Vancouver, British Columbia, telephoned him in early July 2007 to solicit plaintiff's investment in Montana Mining Corp. (Compl. ¶ 8). He alleges that at all times relevant to the case, Betnar was acting on behalf of defendant Wolf Fiedler, also a Canadian citizen. (*Id.* ¶¶ 5, 9). He asserts that Fiedler devised a scheme to induce plaintiff and another alleged victim (Anthony D'Acquisto of Wisconsin) to buy stock in the Montana Mining Corp. at prices above market price. (*Id.* ¶ 11).

The complaint identifies the following allegedly false statements made by Betnar (on behalf of defendant Fiedler) to both Miller and D'Acquisto before their stock purchase:

> A. Within two to three weeks of purchasing Montana Mining Corp. stock, the price will go over $1.00 per share and then rise to $1.25 or higher. (Compl. ¶ 11).
>
> B. The Montana Mining stock was "risk-free" because fund managers and bankers in Europe would buy the stock. (*Id.* ¶ 12).

Plaintiff alleges that he relied on Betnar's representations to purchase 250,000 shares of Montana Mining Corp. at prices between 50 cents and 59 cents per share. The total purchase price was $138,784.00. All purchases are alleged to have occurred between July 20, 2007, and July 26, 2007. (Compl. ¶ 14). According to Exhibit 2 to the complaint, plaintiff made these purchases through a securities firm, not from defendant or Betnar.

Plaintiff alleges that on September 11, 2007, about six weeks after plaintiff's last stock purchase, plaintiff called Betnar, who repeated the prediction that the price per share would exceed $1.25 and that Montana Mining stock was a "no-risk" opportunity. (Compl. ¶ 17). Plaintiff further alleges that he called Betnar once again in "early September" of that year, to question him as to the basis for his prediction that Europeans might pay as much as $1.50 per share of the Montana Mining Corp. stock. Ultimately, Betnar added defendant to the call. Plaintiff alleges that defendant predicted that the stock price would go to $1.50 per share or higher and that there was "nothing to worry about." Fiedler also allegedly claimed that he had sold other stock to Europeans for $7.00 per share, creating the impression that he could do so again. (Compl. ¶ 18).

Plaintiff alleges that in late September 2007 (again, after he had purchased the stock), he insisted on a conference call with Fiedler, which ultimately occurred on September 28, 2007.

Plaintiff alleges that during this conversation, Fiedler confirmed his previous statements. (Compl. ¶¶ 19-21).

Only after plaintiff bought the Montana Mining stock, did he learn that the company had on file quarterly reports with the Securities and Exchange Commission. Plaintiff alleges that he obtained a copy of the Form 10-QSB quarterly report filed by Montana Mining for the period ending June 30, 2007. (Compl. ¶ 22). Plaintiff alleges that the Form 10-QSB shows that the representations made to him earlier by Fiedler and Miller were false and that if he had known of these facts "sooner," he never would have purchased any of the Montana Mining Corp. stock.

Plaintiff alleges that he was able to sell 10,000 shares in July of 2008 at only 24-1/2 cents per share and another 5,900 shares in May 2010 at 5 cents per share. He asserts that the remaining shares in his hands have a market value of one cent each. (Compl. ¶ 15).

## Discussion

### I. Motion to Dismiss for Lack of Personal Jurisdiction

#### A. Governing Principles

Defendant, a resident of Vancouver, British Columbia, seeks dismissal of this action for lack of *in personam* jurisdiction over him. A court may have either general or specific jurisdiction over an out-of-state resident. General jurisdiction depends on continuous and systematic contact with the forum state, such that the courts of that state may exercise jurisdiction over any claim a plaintiff may bring against the defendant. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Plaintiff does not appear to rely on the concept of jurisdiction in this case, and the facts now appearing of record would not support a finding that Mr. Fiedler has such

continuous and systematic contact with the State of Michigan that its courts could exercise general jurisdiction over him.

The concept of specific jurisdiction grants *in personam* jurisdiction over a nonresident defendant only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state. *Kerry Steel*, 106 F.3d at 149. For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the long-arm statute of the forum state must reach the defendant, and the exercise of *in personam* jurisdiction must not offend constitutional due process norms. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549-50 (6th Cir. 2007). In his motion to dismiss, defendant analyzes the issue of personal jurisdiction under this standard. In doing so, defendant ignores plaintiff's invocation of section 10(b) of the Securities Exchange Act in paragraph 25 of his complaint.[1] The Securities Exchange Act includes a provision for nationwide service of process. 15 U.S.C. § 78aa(a). Therefore, the forum for purposes of *in personam* jurisdiction analysis is the defendant's contacts with the United States, rather than any particular federal judicial district. *See United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993).

Under Sixth Circuit authority, specific jurisdiction arising under the nationwide service of process provision of the Securities Exchange Act is governed by three criteria. First, the defendant must have purposely availed himself of the privilege of acting in the United States or have purposely caused a consequence in the United States. Second, the cause of action must arise from these actions. Finally, the exercise of jurisdiction by a court within the United States must be

---

[1] Although the *pro se* complaint identifies only diversity of citizenship as the basis for subject-matter jurisdiction, the complaint clearly invokes section 10(b) of the Securities Exchange Act, over which the federal courts have exclusive jurisdiction. 15 U.S.C. § 78aa(a). Therefore, this court's subject-matter jurisdiction over the case is based both on the existence of a federal question, 28 U.S.C. § 1331, and complete diversity and requisite amount in controversy, 28 U.S.C. § 1332.

reasonable in the circumstances. *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 (6th Cir. 2005). In short, state law is irrelevant, and the propriety of exercising jurisdiction over the nonresident is governed only by the constitutional due-process test of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Because plaintiff alleges a claim under the Securities Exchange Act, the principles of nationwide service of process apply in this case.

B.  Analysis

The party seeking assertion of *in personam* jurisdiction bears the burden of showing that such jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). When a district court rules on a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2), the court has three options. It may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *See Market/Media Research, Inc. v. Union Tribune Publ'g. Co.*, 951 F.2d 102, 106 (6th Cir. 1991). In the present case, no discovery has taken place, so the holding of an evidentiary hearing does not appear warranted. When the court proceeds without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006). To defeat such a motion, the party seeking to assert jurisdiction need only make a *prima facie* showing. *Id.* When the issue of personal jurisdiction is presented at the pleading stage, plaintiff's burden is "relatively slight." *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Plaintiff need only demonstrate facts which support a finding of jurisdiction in order to defeat a motion to dismiss. *Id.*

The parties have wasted a substantial amount of time and effort in arguing about the effect of incidents that are completely irrelevant to the question of *in personam* jurisdiction. First, plaintiff relies on the telephone calls in September 2007 in which Fiedler participated. Plaintiff's claims, however, do not arise from these calls, which took place after plaintiff had purchased his Montana Mining shares. All of plaintiff's fraud theories require a showing that plaintiff justifiably relied on a misrepresentation, proximately causing plaintiff injury. *See, e.g., Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317-18 (2011) (*en banc*) (stating elements of claim under section 10(b) of the Securities Exchange Act); *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 468 (6th Cir. 2011) (same). Plaintiff could not possibly have relied on these telephone conversations in making his decision to purchase stock weeks earlier. The other utterly irrelevant event was a trip that defendant made to the Midwest, including Michigan, in late August or early September of 2007. Plaintiff devotes most of his brief (docket # 9) to quibbling about the details and purposes of this visit, and defendant rises to the bait. However, no one, not even plaintiff, contends that Fiedler's visit to Michigan had anything to do with the stock purchase at issue in this case, which had already been completely consummated by the time of the visit. In order to establish a basis for *in personam* jurisdiction, a plaintiff's claim must "arise from" defendant's contact with the forum state. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680-81 (6th Cir. 2012).

The remaining, and only legitimate, basis for asserting *in personam* jurisdiction over defendant in this case is the allegation that Fiedler specifically devised a scheme to induce plaintiff and another alleged victim to buy stock in the Montana Mining Corp. and that the allegedly false statements made by Betnar were done as an agent of defendant. Plaintiff's complaint (¶ 11) alleges that defendant devised the scheme and that Betnar made allegedly fraudulent statements on behalf

of defendant. Defendant challenges this allegation as conclusory and unsupported, but in doing so completely ignores the affidavit of James Betnar, attached to the complaint as Exhibit 1. (docket # 1-1, ID#s 11-12). Betnar specifically avers that defendant asked him to find people who would buy shares of Montana Mining Corp. stock (Aff. ¶ 2), told him that the problem in finding purchasers is the fact that the stock was worthless (*Id.* ¶ 3), and specifically told Betnar to make false representations to plaintiff and to Tony D'Acquisto. (*Id.* ¶¶ 5-6). For purposes of the present motion, the court must accept these statements as true and cannot rely on the controverting factual assertions made by defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991); *see also Air Prods.*, 503 F.3d at 549. The Sixth Circuit has adopted this rule precisely to prevent nonresident defendants "from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 435 F.2d at 1459.[2]

Accepting, as it must, the allegation that defendant directed Betnar to target plaintiff for a fraudulent stock scheme, the court is faced with the question whether the telephone contacts made by Betnar to plaintiff (allegedly at defendant's direction) are sufficient to create *in personam* jurisdiction against defendant. Where, as here, the "actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *accord Rossi v. Wohl*, 246 F. App'x 856, 858 (5th Cir. 2007) (allegations that defendants communicated false information to the plaintiff in

---

[2] A defendant who disputes facts regarding personal jurisdiction has recourse to the court's discretionary authority to hold an evidentiary hearing. *Theunissen*, 435 F.3d at 1459. Defendant, however, opposes plaintiff's request for an evidentiary hearing. (Brief, docket # 16). Defendant cannot have it both ways. Under controlling Sixth Circuit authority, he must either accept the facts in plaintiff's affidavits or seek an evidentiary hearing to dispute them. Defendant has done neither, preferring to ignore Betnar's affidavit.

Texas were sufficient to raise a *prima facie* case of specific personal jurisdiction). This is a consequence of the so-called "*Calder*-effects" doctrine, established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court held that a plaintiff can establish personal jurisdiction when he alleges that the defendant "expressly aimed" tortious conduct at the forum in question and that the "brunt of the harm" is felt there. 465 U.S. at 789; *see Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012). It is not enough that defendant's conduct causes foreseeable harm in the forum state. Rather, his conduct must be "aimed expressly" at the forum state. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). Under these authorities, a defendant who directs his agent to make fraudulent statements to an identified person residing in another state has purposely availed himself of the privilege of causing consequences in that state. Plaintiff has established a *prima facie* case on the first relevant factor, purposeful availment.

The other two tests are easily met. Plaintiff's claim arises directly from the allegedly fraudulent statements made by Betnar to him by telephone, allegedly at defendant's direction. Therefore, his cause of action arises from the very contacts that create jurisdiction. Finally, the exercise of jurisdiction by a court within the United States is reasonable in the circumstances of this case. This inquiry is governed by three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metals Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987); *see City of Monroe Employees*, 399 F.3d at 666. With regard to burden on the defendant, the Supreme Court has cautioned that great "care and reserve" should be exercised when extending personal jurisdiction into the international field. *Asahi*, 480 U.S. at 115. Nevertheless, the Sixth Circuit has recognized that the burden on a Canadian defendant is much

different in kind than that imposed upon a defendant who resides in a far-away land, such as Japan. *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). The burden placed on defendant in defending this case in the State of Michigan is no greater in kind than the burden imposed on a defendant who lives in Seattle, Washington, or Portland, Oregon. It is apparent from the meager factual materials now in the record that defendant does indeed travel to the United States for business purposes. Furthermore, a significant percentage of litigation in the federal courts is resolved without any appearance by the parties in court. Defendant has retained Michigan counsel, and the chances are good that he will not be placed to the burden and expense of traveling to Michigan for purposes of this case. The other two relevant factors weigh heavily in favor of reasonableness, in that the forum state always has a high interest in vindicating the rights of its citizens who are targeted for fraudulent schemes, and plaintiff's interest in obtaining relief is obviously high.

For the foregoing reasons, I conclude that plaintiff has made a *prima facie* showing of *in personam* jurisdiction over the defendant. I therefore recommend that defendant's motion under Fed. R. Civ. P. 12(b)(2) to dismiss for lack of *in personam* jurisdiction be denied, without prejudice to defendant's ability to reassert this defense at an evidentiary hearing after discovery or at trial.

**II.     Statute of Limitations**

A.     Federal Securities Exchange Act

Plaintiff alleges that the fraudulent statements made by Betnar, at the direction of defendant, violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and

the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5. Section 10(b) forbids deceptive conduct "in connection with the purchase or sale of" a security, and Rule 10b-5 prohibits the making of any "untrue statement of material fact" or omission of any material fact "necessary . . . to make the statement made . . . not misleading." Defendant raises the affirmative defense of the statute of limitations. Although affirmative defenses are generally not amenable to resolution by motion to dismiss under Fed. R. Civ. P. 12(b)(6), an exception exists where the untimeliness of a civil action is patent on the face of the complaint. *See Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992); *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). In making this determination, the court may rely on documents attached to a complaint as exhibits. FED. R. CIV. P. 10(c); *see Benzon v. Morgan, Stanley Distrib., Inc.*, 420 F.3d 598, 603 (6th Cir. 2005).

The timeliness of claims brought under section 10(b) has been governed since the year 1990 by a uniform statute of limitations created by 28 U.S.C. § 1658(b). A private suit for securities fraud under section 10(b) "may be brought not later than the earlier of -- (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation." 28 U.S.C. § 1658(b).

The five-year period created by section 1658(b) is generally considered to create a period of repose. *See, e.g., Margolies v. Deason*, 464 F.3d 547, 551 (5th Cir. 2006). That is, the statute extinguishes a cause of action after the stated period whether or not the plaintiff has incurred injury by that time. *Id.* The five-year period accrues from the date of the "violation," that is, from the date of the alleged fraudulent statement rather than the date of injury. *See McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 929-30 (7th Cir. 2011); *In re Longtop Fin. Tech., Ltd. Sec. Litig.*, 939 F. Supp.

2d 360, 378 (S.D.N.Y. 2013) (collecting cases). In the present case, plaintiff's complaint establishes that the allegedly fraudulent statements were made in early July 2007. The five-year period of repose therefore expired in July 2012, before this lawsuit was filed.

The two-year period created in section 1658(b)(1) is a period of limitations. It begins to run once a plaintiff actually discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation, whichever comes first. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010). Discovery must include all necessary elements of the claim, including that of *scienter*. *Id.* at 649.

In the present case, the complaint itself identifies the occasion on which plaintiff realized that "the representations Fiedler made to Miller and the representations Betnar made to Miller on behalf of Fiedler were false." (Compl. ¶ 23). Plaintiff alleges that he obtained a copy of the Form 10-QSB filed by Montana Mining Corp. with the SEC for the period ending June 30, 2007. (*Id.* ¶ 22). The complaint identifies those passages of the Form 10-QSB that contradict the oral representations that he alleges were made to him. The complaint affirmatively alleges that if plaintiff had known of these facts, "he never would have purchased one share of Montana stock." (*Id.* ¶ 23). The Form 10-QSB that plaintiff refers to is attached to his complaint as Exhibit 6 and shows that plaintiff printed it on June 18, 2008. (*See* ID# 41). By his own admission, plaintiff knew of the fraud at that time, causing the two-year period to begin in 2008 and end in 2010.

If, for whatever reason, plaintiff's access to the Form 10-QSB is deemed insufficient to satisfy the requirements of the *Merck* case, then the affidavit of James Betnar, attached as Exhibit 1 to the complaint, certainly suffices. That affidavit, which is dated January 29, 2011, attests to the fraudulent scheme that plaintiff now alleges and identifies defendant as the source of the fraud. (*See*

ID#s 11-12). The two-year limitations period of section 1658(b) accrued no later than January 29, 2011 and therefore expired on January 29, 2013. This action was initiated on May 23, 2013, approximately four months later.

B. Uniform Securities Act

Plaintiff alleges that the same fraudulent statements violated the anti-fraud provisions of the Michigan Uniform Securities Act, MICH. COMP. LAWS §§ 451.2101-2612. Plaintiff invokes the anti-fraud provisions of section 501, which make it unlawful for a person, in connection with the offer or sale of any security, to directly or indirectly make an untrue statement of a material fact. MICH. COMP. LAWS § 451.2501(b). The Uniform Securities Act establishes time limits identical to those of the Securities Exchange Act: suit must be brought no later than five years after the violation occurred or two years after discovery of the facts constituting the violation. MICH. COMP. LAWS § 451.2509(10)(b). Consistent with federal law, the Michigan courts consider the five-year period to be a period of repose and the two-year period to be a period of limitations. *See Pukke v. Hyman Lippitt, P.C.*, No. 265477, 2006 WL 1540781, at * 6-8 (Mich. Ct. App. June 6, 2006).

Because the limitations period established by federal and state law are identical, the analysis in section II.A. above under Securities Exchange Act applies to the Michigan Uniform Securities Act as well. Plaintiff's complaint was filed long after the expiration of the five-year period of repose and the two-year period of limitations.

C. Common-Law Fraud

Plaintiff also asserts a claim for common-law fraud under Michigan law. This remedy is clearly available to a party in plaintiff's position, as the remedies created by the Uniform Securities

Act are not exclusive. *See* MICH. COMP. LAWS § 451.2509(13). Claims for common-law fraud are subject to a six-year period of limitations. This period begins to run when the fraud was committed, not when it was discovered. *See Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557 (Mich. 2003). As the fraud allegedly occurred in July 2007, plaintiff's complaint was timely, at least with respect to the common-law fraud claim, as it was filed before July 2013.

### III. Common-Law Fraud Claim

Plaintiff's complaint identifies two allegedly fraudulent statements made by Betnar at defendant's direction. First, plaintiff asserts that Betnar told him that the value of the stock would soon increase to $1.00 per share and then go as high as $1.50 per share. Second, Betnar allegedly told plaintiff that the investment was risk-free because Europeans would purchase his shares at that price. Plaintiff alleges that these assertions were false and on this basis brings a common-law fraud claim under Michigan law. Defendant seeks dismissal on the ground that these statements, if made, were predictive in nature and therefore cannot establish a claim for common-law fraud under Michigan law.

In the parlance of securities litigation, predictive statements are called "soft" information. Federal law imposes no duty on a speaker to disclose soft information, such as matters of opinion and predictions. *See Indiana State Dist. Council of Laborers and Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 503-04 (6th Cir. 2013). When a person decides to speak, however, such soft information can be actionable. *See id.* at 505. Michigan law, in contrast, takes a harder line. The Michigan Supreme Court authoritatively set out the elements of

-14-

an actionable fraud claim in *Hi-Way Motor Co. v. International Harvester Co.*, 247 N.W.2d 813 (1976):

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Id.* at 816 (citations and internal quotations omitted). Furthermore, "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Id.* Unfulfilled predictions or promises about future events, including future profitability of an investment, are not actionable fraud under Michigan law. *Id. Van Tassel v. McDonald Corp.*, 407 N.W.2d 6 (Mich. Ct. App. 1987) is instructive. In that case, plaintiff alleged that she was induced to purchase a franchise by statements that she could make more money owning her own business than she could working, that the store was a "gold mine" and that she would make enough money to sustain an excellent lifestyle. The court held that such statements are not actionable as fraud, as they do not relate to present or past facts. 407 N.W.2d at 9.

Plaintiff's common-law fraud claim is based completely on predictions of the future value and marketability of stock. No allegation is made concerning a misrepresentation of the company's past performance. Rather, plaintiff alleges that he relied on representations concerning a future increase in stock price and the willingness of possible buyers to pay that price in the future. Such representations are probably not actionable under the federal securities laws, but they are

clearly not actionable under Michigan law. Plaintiff has failed to state an actionable claim for common-law fraud.

## Recommended Disposition

For the foregoing reasons, I recommend that defendant's motion to dismiss for lack of jurisdiction be denied without prejudice, but that his motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) be granted.

Dated: December 5, 2013 /s/ Joseph G. Scoville
United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).